UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

DONALD LEE CURTIS,

                              Plaintiff,

          v.                                              9:15-CV-0718
                                                          (GLS/TWD)

CAPTAIN LUCIA et al.,

                              Defendants.

─────────────────────────────────────

APPEARANCES:

DONALD LEE CURTIS
86-A-3111
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 14902

GARY L. SHARPE
Chief United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Donald Lee Curtis pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an in

forma pauperis application.[1]  Dkt. No. 1  ("Compl."); Dkt. No. 2 ("IFP Application").

## II.   IFP APPLICATION

Upon review of plaintiff's IFP Application, the Court finds that plaintiff has

─────────────────────────

[1] Plaintiff is a frequent litigator.  Based on the court's review of his litigation history on the Federal
Judiciary's Public Access to Court Electronic Records ("PACER") Service, it appears that plaintiff has filed more
than twelve cases in courts in the Second Circuit since 1989.  *See* U.S. Party/Case Index
<http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl > (last visited July 22, 2015).

demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York.  Therefore, plaintiff's IFP Application (Dkt. No. 2) is granted.

## III.    INITIAL SCREENING

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); see Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

---

[2]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

3

## IV.    SUMMARY OF THE COMPLAINT

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Plaintiff is a prison inmate currently being held at Upstate Correctional Facility ("Upstate C.F.").[3]  The complaint contains allegations related to plaintiff's confinement at Clinton Correctional Facility ("Clinton C.F.").  Compl. at 6.  During the first week of January 2014, defendant D. G. DuBrey ("DuBrey"), a guard a Clinton C.F., began serving plaintiff Kosher meals without gloves.  *Id.*  DuBrey ignored plaintiff's request that he use gloves

---

[3]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

before touching plaintiff's Kosher meals.  *Id.*  Plaintiff complained to defendant, R. Bola ("Bola"), a food service worker, and asked Bola to direct DuBrey to use gloves.  *Id.* at 7.  Bola "laughed" and stated, "you Jews are always complaining" and informed plaintiff that DuBrey would "serve[] the Kosher meals as he . . . sees fit."  Compl. at 7.  Plaintiff refused to accept the Kosher tray and returned to his cell to write a complaint.  *Id.*  Plaintiff wrote to David Timmons ("Timmons"), the Food Service Administrator, and informed Timmons that DuBrey was serving Kosher food without gloves.[4]  *Id.*

On January 4, 2014 and every day thereafter (except weekends), DuBrey continued to serve plaintiff's Kosher meal tray and hot water without gloves.  *Id.*  Plaintiff continued to ask DuBrey to use gloves before handling his Kosher food tray.  Compl. at 9.  DuBrey told plaintiff that if he did not like the way the food was served, "then he should get off the Kosher meal."  *Id.*

On January 14, 2014, plaintiff received a Memorandum from Timmons regarding plaintiff's correspondence.  *Id.*; Dkt. No. 1-3 at 11.  Timmons confirmed that plaintiff was on the Kosher list and stated, "I do not know who you are talking about when you say an officer is out to get you off the kosher list, you will have to take that up with Security."  Dkt. No. 1-3 at 11.  Timmons also advised plaintiff that he should not be taking his food tray to his cell to eat at a later time.  *Id.*

On January 15, 2014, DuBrey served plaintiff's Kosher food and hot water without gloves.  Compl. at 10.  Plaintiff ignored DuBrey and began to drink his tea, that he made with the hot water.  *Id.*  Plaintiff noticed "an odor" emitting from the cup of tea.  *Id.*  Later that

---

[4]  Timmons is not a named defendant.  Plaintiff's complaint is sixty pages in length with 152 pages of exhibits.  However, plaintiff's letter to Timmons is not annexed as an exhibit to the complaint.

evening, plaintiff's "body broke out" with "welts" and he experienced swelling in his ankles and legs.  *Id.* at 11.

The next morning, plaintiff woke up and noticed that the swelling and hives subsided. *Id.*  Plaintiff went to breakfast and lunch and was again served by DuBrey without gloves.  *Id.* Plaintiff told DuBrey that, as a Jew, he must eat food properly prepared and handled, "per Kosher tenets."  *Id.*  DuBrey ignored plaintiff and plaintiff sat to consume his meal.  Compl. at 11-12.  When plaintiff removed the cover from his tray, he noticed that someone "made a mess of the food inside."  *Id.* at 12.  Plaintiff looked up to see Dubrey laughing at him.  *Id.* Plaintiff could not eat the food and began to consume the tea.  *Id.*  Again, plaintiff noticed an odor.  *Id.*  Later that evening, plaintiff noticed welts and hives on his body and swelling in his feet.  Compl. at 12.

On January 17, 2014, plaintiff was treated for hives and prescribed medication.  Dkt. No. 1-3 at 12.  Plaintiff informed the medical staff that he believed he was poisoned.  Compl. at 12.  Plaintiff was sent back to his cell but began to vomit and experienced excessive bowel movements.  *Id.*

On January 21, 2014, plaintiff was treated for vomiting, burning and itching from a "continued allergic reaction from January 17, 2014."  Dkt. No. 1-3 at 13.  Plaintiff received injections because his forehead had "swollen to the size of a football."  Compl. at 14. Plaintiff was "temporarily admitted" to the infirmary for two hours and then returned to his cell for bed rest.  *Id.*  On February 4, 2014, plaintiff was treated for complaints of "hives at night." Dkt. No. 1-3 at 14.  The medical personnel noted that no hives were present at the examination.  *Id.*  Plaintiff was advised to return when he experienced an outbreak and

6

received a prescription for Benadryl. *Id.* On February 9, 2014, plaintiff received an emergency sick call visit at his cell. *Id.* at 30. The medical staff noted that plaintiff was "covered in hives, back, face, legs, stomach." Dkt. No. 1-3 at 30. Plaintiff received medication and was told to request sick call for Tuesday and an emergency visit if he had issues with his breathing. *Id.* On February 14, 2014, February 24, 2014, March 14, 2014 and March 17, 2014, plaintiff requested and received emergency sick call for hives.[5] *Id.* at 30-31, 33, 34.

On February 20, 2014, plaintiff went to the mess hall and was threatened by DuBrey, with physical harm, if he did not "get off the Kosher meals." Compl. at 16. Plaintiff immediately returned to his cell and wrote a complaint to Superintendent LaValley and Ms. D. Amo ("Amo"), a food service administrator.[6] *Id.* Plaintiff informed Lavalley and Amo that due to DuBrey's threats, "[plaintiff] was removing himself from the Kosher meal effective 3-4-14." *Id.* Plaintiff reiterated his suspicion that DuBrey poisoned his food and water and stated that he would no longer accept any food served by DuBrey with "ungloved hands." *Id.* at 16-17.

On February 25, 2014, Amo interviewed plaintiff about his complaints, grievances, and issues with DuBrey. *Id.* at 15; Dkt. No. 1-3 at 15. Plaintiff told Amo that he suspected that DuBrey tampered with his food and water. Dkt. No. 1-3 at 15. Amo assured plaintiff that she would speak with DuBrey and direct him to wear gloves. *Id.* Plaintiff claimed that he had an affidavit from another inmate who saw DuBrey, "spray some cleaning solution into two

---

[5] During that time, plaintiff received other emergency sick call visits for injuries/conditions unrelated to the issues addressed in this complaint.

[6] LaValley and Amo are not defendants herein.

[S]tyrofoam cups at the Kosher counter."[7]

On March 9, 2014, plaintiff went to the mess hall and executed a form removing himself from the Kosher meal due to DuBrey's threats.  Compl. at 19; Dkt. No. 1-3 at 44.

On March 10, 2014, plaintiff entered the mess hall and went to the opposite line for breakfast.  Compl. at 20.  Bola and DuBrey immediately approached plaintiff and told plaintiff that he was "suppose to be in the Kosher line."  *Id.*  Another employee and guard told DuBrey and Bola that plaintiff "signed off" yesterday and that the sign-off sheet was in the office.  *Id.*  Five minutes later, an officer approached plaintiff and told plaintiff that, on DuBrey's and Bola's orders, plaintiff was going to keeplock confinement.  Compl. at 21.  On March 10, 2014, plaintiff filed a grievance with respect to DuBrey's "retaliatory adverse action" and sent a letter to LaValley entitled "Harassment Keeplock".  *Id.*  Plaintiff informed LaValley that DuBrey was retaliating against him for his complaints.  *Id.*; Dkt. No. 1-3 at 46-51.

Plaintiff was served with a Tier III Misbehavior Report, dated March 10, 2014, prepared by DuBrey and "endorsed" by Bola.  *Id.* at 22.  The report charged plaintiff with threats, disturbing conduct, harassment, and refusing a direct order.  Dkt. No. 1-3 at 53.  On March 11, 2014, plaintiff gave his employee assistant a list of documents and witnesses that plaintiff would need to prepare for his disciplinary hearing.  Compl. at 22.  Specifically, plaintiff asked for copies of the following documents:  grievances filed; letters to LaValley; the CAD "sign off form;" CAD sign in sheets; and plaintiff's disciplinary records.  Dkt. No. 1-3 at 54-55.  Plaintiff asked the hearing officer to "call two inmate witnesses at random who are

---

[7]  Plaintiff claims that the affidavit "disappeared" when he sent it to the facility mailroom.  However, plaintiff retained a copy and annexed the affidavit as an exhibit to this complaint.  *See* Compl. at 17.

unknown to me, but were present at breakfast on 3-10-14 . . . and ask these witnesses what, if anything seen [sic] me do." *Id.*

On March 14, 2014, plaintiff attended a disciplinary hearing with respect to the March 10, 2014 Misbehavior Report. Compl. at 24. Defendant Captain Lucia ("Lucia"), presided over the hearing. *Id.* Plaintiff told Lucia that his employee assistant failed to provide him with the requested documents and told plaintiff that his witnesses refused to testify. *Id.* Plaintiff was permitted to testify and the hearing was adjourned. *Id.* at 25.

On March 24, 2014, Lucia found plaintiff guilty of the charges in the March 10, 2014 Misbehavior Report and sentenced plaintiff to two months in the SHU. *Id.* at 25; Dkt. No. 1-2 at 56.

Plaintiff appealed Lucia's March 24, 2014 determination. Compl. at 41. On May 27, 2014, the decision was reviewed and reversed. Dkt. No. 1-3 at 68. However, plaintiff served the entire two-month sentence in the SHU. Compl. at 41.

Construing the complaint liberally, plaintiff asserts claims against defendants for violations of his constitutional rights guaranteed by the First, Eighth, and Fourteenth Amendments. *See generally* Compl.

## IV.    ANALYSIS

### A.    Freedom of Religion

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The free exercise clause applies to prison inmates, subject to appropriate limiting factors. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's

Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  To assess a free exercise claim, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (1988) (citations omitted).  "Prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Ford*, 352 F.3d at 597.  "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *McEachin v. McGuinnis*, 357 F.3d 204-05 (2d Cir. 2004).

Plaintiff claims that he was "threatened with physical harm," "forc[ing] [plaintiff] off [his] religious meal" and therefore "chilling plaintiff from exercising his rights to freedom of religion."  Compl. at 17, 38; Dkt. No. 1-2 at 5.  Plaintiff has sufficiently plead that he had sincerely held religious beliefs and was entitled to receive Kosher meals.[8]  Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's First Amendment free exercise claims against DuBrey and Bola survive *sua sponte* review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary

---

[8]  On the bottom for the CAD "sign off" form, there is the following notation: "Do not remove until you hear from DSP Proulx.  He is on a court order to receive CAD.  Proulx will check with legal."  The notation is unsigned.  Dkt. No. 1-3 at 44.

judgment.[9]

### B.    Eighth Amendment Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

### a.    Food Tampering

Plaintiff claims that DuBrey tampered with his food and water in violation of his constitutional rights.  Compl. at 37.  As a result, plaintiff suffered hives, welts, and swelling, and required medical treatment.  The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08-CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03-CV-1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted).  "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment."  *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15).  Allegations of food tampering alone do not suffice to establish an

---

[9]  To the extent that plaintiff's complaint could be interpreted as alleging a cause of action for a violation of his right to religious freedom due to being served his Kosher meal without gloves, that claim is subject to dismissal.  Plaintiff has failed to plead any facts suggesting that serving his meals without gloves substantially burdened the exercise of his religion.  *See Odom v. Dixion*, No. 04-CV-889, 2008 WL 466255, at *8 (W.D.N.Y. Feb. 15, 2008) (the plaintiff's allegation that the manner in which kosher meals were provided, i.e., without proper utensils or in hermetically sealed food packs, failed to establish that defendants' substantially burdened a key tenet of his religion).

Eighth Amendment violation; in addition, a plaintiff must allege that he suffered "distinct and palpable injury." *M.F. v. Reish*, No. 95 Civ 4904, 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Here, plaintiff claims that he suffered from hives, welts, an allergic reaction, and swelling as a result of DuBrey "poisoning" his water.  Plaintiff has sufficiently plead an Eighth Amendment food tampering claim to require a response from DuBrey.  *See Lipsey v. Schwarzenegger,* No. 08-CV-1726, 2009 WL 5030136, at *4 (E.D. Cal., Dec. 15, 2009) (the plaintiff sufficiently plead an Eighth Amendment claim with allegations that his throat swelled and he "got sick to his stomach" after ingesting a plate of contaminated food).  At this time, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**b.    Deliberate Indifference to Serious Medical Needs**

Plaintiff alleges that in January 2014, "a doctor" ordered plaintiff to undergo a blood test, but each time plaintiff was scheduled for the test, a "co-worker of DuBrey would not let plaintiff go to the callout."  Compl. at 18.  In July 2014, the blood test was administered.  *Id.* at 36.  To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *See Farmer*, 511 U.S. at 825, 834.  Deliberate indifference has two necessary components, one objective and the other subjective.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks

12

omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate

indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . .

that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v.*

*Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553).

"Deliberate indifference requires more than negligence but less than conduct undertaken for

the very purpose of causing harm."  *Hathaway*, 37 F.3d at 66.  To assert a claim for

deliberate indifference, an inmate must allege that (1) a prison medical care provider was

aware of facts from which the inference could be drawn that the inmate had a serious

medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511

U.S. at 837; *Chance*, 143 F.3d at 702.  The inmate must also demonstrate that the provider

consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511

U .S. at 835.

　　"Although a delay in providing necessary medical care may in some cases constitute

deliberate indifference, [the Second Circuit] has reserved such a classification for cases in

which, for example, officials deliberately delayed care as a form of punishment, ignored a

'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for

over two years."  *Culp v. Koenigsmann*, No. 99 Civ. 9557, 2000 WL 995495, at *7-8

(S.D.N.Y. July 19, 2000) (quoting *Demata v. NYS Dep't of Correctional Servs*., No. 99-0066,

198 F.3d 233, 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)); *see Amaker v. Coombe*, No.

96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical

treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay

reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or

fast-degenerating condition or to some other condition of extreme pain that might be

alleviated through reasonably prompt treatment.") (citing cases); *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., No. 00 Civ. 4968, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (noting that some delays in receiving medical treatment are common even outside the prison context). On a claim based upon a significant delay in receiving treatment, "a plaintiff must allege that the individuals causing the delay had the requisite state of mind, which . . . is the equivalent of criminal recklessness." *Jones v. Vives*, 532 F. App'x 48, 50 (2d Cir. 2013).

Here, the complaint lacks any facts establishing that the delay in administering the blood test caused plaintiff any injury. *See Jefferson v. Alves*, No. 06-5479, 2007 WL 4209444, at *8 (W. D. Wash. Nov. 26, 2007) (the allegation that the defendant interfered with medical treatment because she confiscated the plaintiff's orthopedic shoes failed to state a cause of action as the plaintiff failed to show that the denial of his shoes caused any injury). The complaint, as presently written, does not contain any allegation that plaintiff's daily activities were significantly affected or that his condition caused substantial pain. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003).

Even assuming that the delay in administering the blood test resulted in a serious condition, plaintiff has failed to satisfy the second prong of the analysis. The complaint lacks any information with respect to who ordered the blood test; when it was ordered; or how many times it was delayed. More importantly, plaintiff has not identified any individual who was personally involved in delaying the test. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries

14

suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Plaintiff summarily states that DuBrey, Bola, and "others" conspired to delay his blood test but fails to sufficiently allege how the defendants were personally involved in any alleged constitutional deprivation.

Plaintiff's Eighth Amendment deliberate indifference claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Conditions of Confinement

Plaintiff claims that Lucia violated plaintiff's Eighth Amendment rights because he suffered "harsh conditions" during his sixty-day SHU confinement. Compl. at 37, 40. Plaintiff claims that SHU staff refused to allow plaintiff to wear his medical boots and claims that he was denied recreation. Compl. at 37, 40; *see also* Dkt. No. 1-2 at 12.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Second Circuit has held that in order for a plaintiff to demonstrate that the conditions of his

confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an

objective test and a subjective test:

> First, the plaintiff must demonstrate that the conditions of his
> confinement result in unquestioned and serious deprivations of
> basic human needs. Second, the plaintiff must demonstrate
> that the defendants imposed those conditions with deliberate
> indifference.

*McAllister v. Garrett*, No. 10-CIV-3828, 2011 WL 3875423, at *10-11  (S.D.N.Y. Sept. 1,

2011) (citing *Welch v. Bartlett*, 125 F. App'x 340, 342 (2d Cir. 2005)).

"Restrictive SHU conditions on their own do not, per se, rise to the level of cruel and

unusual punishment."  *Booker v. Maly*, No. 12-CV-246 (NAM/ATB), 2014 WL 1289579, at

*16 (N.D.N.Y. Mar. 31, 2014).  "Normal" SHU conditions include being kept in solitary

confinement for twenty-three hours per day, provided one hour of exercise in the prison yard

per day, and permitted two showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir.

2004).

Here, as presently pleaded, plaintiff's complaint does not contain any allegations to

plausibly suggest that plaintiff suffered from a deprivation of any basic human need.  Plaintiff

complains that his two-month SHU confinement was "harsh."  However, plaintiff's vague

allegations fails to demonstrate that the conditions were objectively serious to trigger

constitutional protections.  *McNatt v. Unit Manager Parker*, No. 99-CV-1397, 2000 WL

307000, at *4 (D.Conn. January 18, 2000) (totality of conditions in restrictive housing unit,

including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning

supplies for six days; no toilet paper for one day; no toiletries or clothing for six days; no

shower shoes; dirty showers; cold water that did not function properly; and smaller food

portions, while not pleasant, did not rise to level of Eighth Amendment violation)); *see also*

*Thomas v. Smith*, No. CIV-83-33, 559 F.Supp. 223, 224 (W.D.N.Y. Feb. 3, 1983) (complaint

alleging unconstitutional denial of basic hygiene items such as deodorant, soap, shampoo

while confined in Attica's SHU dismissed as frivolous).  Essentially, plaintiff takes issue with

the normal conditions of SHU confinement.  Courts in this Circuit have consistently held that

such claims fail to state a constitutional cause of action.  *See Sealey v. Giltner*, 197 F.3d

578, 581 (2d Cir.1999) (valid conditions for confinement include situations where the "inmate

is confined to his cell 23 hours per day, can take no more than three showers per week, has

limited library privileges and no telephone privileges"); *see also Shannon v. Venettozzi*, No.

13 Civ. 4530, 2015 WL 114179, at *9 (S.D.N.Y. Jan. 8, 2015) (allegation that inmate was

denied access to special events and programs, restricted to cell for twenty-three hours per

day, denied phone privileges and suffered mental anguish and stress were insufficient to

suggest a claim for unconstitutional confinement) (citations omitted).

    Moreover, plaintiff has not alleged that any defendant was personally involved in any

condition he suffered while in the SHU.  Plaintiff refers to "SHU staff" but has not identified

any individual by name and has not alleged that any named defendant was assigned to the

SHU or responsible for the conditions of his confinement in that area.  Plaintiff does not

assert that any named defendant was aware of his SHU conditions or responsible for

addressing the issues.  Thus, plaintiff's Eighth Amendment conditions of confinement claims

will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure

to state a claim upon which relief may be granted.

### 4.    Excessive Force

    Plaintiff claims that SHU staff refused to honor plaintiff's "front cuff pass" and

repeatedly handcuffed plaintiff behind his back.  Compl. at 41.  Plaintiff claims that he

suffered from a documented medical condition and had a "pass" indicating that he "should never be handcuffed behind his back." *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey,* No. 11-CV-0257 (DNH/DEP), 2013 WL 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Here, the complaint lacks any information regarding the date, time, or location of any

18

specific incident.  More importantly, plaintiff does not identify any individual involved in any

incident related to handcuffing nor has plaintiff provided any facts suggesting that there was

any motive for the use of force or that force was applied force in a malicious or sadistic

manner so as to cause plaintiff harm.  *See Meeks v. Kartan*, No. 08-CV-1037 (GLS/DEP),

2010 WL 3909356, at *4 (N.D.N.Y. Sept. 30, 2010) (the plaintiff did not allege a motive for

the defendants actions and thus, the court could not infer a malicious intent); *see also*

*Brooks v. Rock*, No. 11-CV-1171 (GTS/ATB), 2014 WL 1292232, at *14 (N.D.N.Y. Mar. 28,

2014) (citing *Bilan v. Davis*, No. 11 Civ. 5509, 2013 WL 3940562, at *6 (S.D.N.Y. July 31,

2013) (in the absence of allegations that the force used against him was intentional and

wanton, the plaintiff's excessive force claim must fail) (Rept. & Recommendation), *adopted*,

2013 WL 4455408 (S.D.N.Y. Aug 20, 2013).  Consequently, plaintiff's excessive force claims

are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.

### C.    Retaliation

Plaintiff claims that, "within days of complaints written repeatedly by plaintiff against

DuBrey and Bola and one day after plaintiff received Timmons' memo," DuBrey and Bola

falsely charged plaintiff on March 10, 2014 in retaliation for plaintiff's grievances.  Compl. at

37; Dkt. No. 1-2 at 7.  Plaintiff also alleges that DuBrey and Bola interfered with his medical

treatment in retaliation for plaintiff's "many complaints against DuBrey."  Compl. at 38.

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts

plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the

defendants took "adverse action" against the plaintiff – namely, action that would deter a

similarly situated individual of ordinary firmness from exercising his or her constitutional

rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).   To prevail on a retaliation claim, a plaintiff must first assert that the plaintiff's conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).   A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.2001) (citations omitted) (the Court must exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases).

Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the complaint alleges enough to warrant a responsive pleading from DuBrey and Bola with respect to the retaliation claim.  In so ruling, the Court expresses no opinion as to whether plaintiff's claims can

withstand a properly filed motion to dismiss or for summary judgment.

### D.    Due Process

Plaintiff claims that Lucia violated his Fourteenth Amendment Due Process rights during plaintiff's March 24, 2014 disciplinary hearing.  Compl. at 39.  Plaintiff contends that Lucia denied plaintiff the right to present documentary evidence and call witnesses.  *Id.*

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

### a.    Liberty Interest

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that: (1) the State actually created a protected liberty interest in being free from segregation; and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.  To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement.  *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).  When assessing the

21

severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998). The Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

In order to state a viable cause of action for a violation of due process, plaintiff must plead facts to establish that he had a liberty interest in being free from confinement in the SHU. Here, plaintiff's sixty-day SHU confinement, without any facts suggesting that he suffered from atypical conditions or significant deprivations, does not create a protected liberty interest to trigger the protections afforded by the Due Process Clause. *See Edmonson v. Coughlin*, No. 95-CV-97,1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) ("disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not atypical or significant in relation to the ordinary incidents of prison life."); *see also Monroe v. Janes*, No. 06-CV-859 (FJS/DEP), 2008 WL 508905, at *9 (N.D.N.Y. Feb. 21, 2008) (collecting cases) (sixty days in the SHU, without more, is not sufficient to create a liberty interest).

**b.    Procedural Due Process**

Even assuming plaintiff could establish that he suffered a deprivation of a constitutional liberty interest, plaintiff has failed to allege any facts to suggest that he was denied due process in connection with his disciplinary hearing. The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights

22

due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). An inmate is entitled to "(a) written notice of the claimed violations . . .; (b) disclosure [to the prisoner] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body . . .; and (f) a written statement by the fact finders as to the evidence relied on." *Wolff v. McDonald*, 418 U.S. 539, 559 (1974). The due process clause also requires that a hearing officer's determination be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied if there is any evidence in the record that supports the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000)). In the Second Circuit, the "some evidence" standard requires some "reliable evidence." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).

Plaintiff claims that his witnesses were not called to testify and that Lucia denied him the right to produce evidence. Dkt. No. 1-2 at 11. The complaint is devoid of any facts establishing how the outcome of the hearing would have been different if these witnesses and evidence were produced. Plaintiff's conclusory allegations, without more, fail to state a cause of action. *See Lewis v. Murphy*, No. 12-CV-268 (NAM/CFH), 2014 WL 3729362, at *13 (N.D.N.Y. July 25, 2014) (plaintiff failed to show how outcome of hearing would have been different had employee assistant interviewed witnesses). Plaintiff's Fourteenth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E.    State Law Claims

23

Plaintiff claims that Lucia's conduct during the disciplinary hearing violated New York Correction Law § 138(4).  Compl. at 40.  Violations of New York's Correction Law do not give rise to constitutional claims, however, violations of the Correction Law that deprive a plaintiff of his due process are protected by the Fourteenth Amendment.  *See Richard v. Fischer*, No. 11-CV-6013, 38 F.Supp.3d 340, 360 (W.D.N.Y. Aug. 7, 2014).  Of relevance here, plaintiff alleges that defendants violated Correction Law § 138 which governs institutional rules and regulations for inmates at correctional facilities.  Section 138(4) prohibits disciplining inmates who "mak[e] written or oral statements, demands, or requests involving a change of institutional conditions, policies, rules, regulations, or laws affecting an institution."

As presently plead, the complaint fails to state a cognizable cause of action against any defendant based upon New York State Correction Law § 138.  *See Richard*, 38 F.Supp.3d at 361 (because the plaintiff has failed to adequately allege a due process violation, his Fourteenth Amendment claim based upon a violation of the New York Correction Law and internal prison policies was dismissed).  Consequently, plaintiff's Fourteenth Amendment claim against Lucia based upon Correction Law § 138 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F.      Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello v.*

24

*Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level." *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only a vague statement that the defendants worked together to violate his rights. Plaintiff's conclusory allegations do not support a "plausible" conspiracy claim involving any of the defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." *Dorsey v. Fisher*, No. 09-CV-1011 (GLS), 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted).

Moreover, plaintiff's conspiracy claims are barred by the intra-corporate conspiracy doctrine. The doctrine states that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Nassau Cnty. Employee "L" v. Cnty. of Nassau*, 345 F. Supp. 2d 293, 304 (E.D.N.Y. 2004). The doctrine applies when officers and officials are working within the scope of their official duties. *Id.* The doctrine excludes conspiracy claims under §1983 against DOCCS employees working within the scope of their employment. *Toliver v. Fischer*, No. 12-CV-0077 (MAD/ATB), 2015 WL 403133, at *8 (N.D.N.Y. Jan. 29, 2015).

As a result, the Court finds that plaintiff has failed to state a claim for conspiracy upon which relief may be granted and the claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED.**[10]  The Clerk of the Court shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's authorization form (Dkt. No. 3) and notify officials that plaintiff has filed this action and are required to pay the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment deliberate indifference claims; (2) Eighth Amendment conditions of confinement claims: (3) Eighth Amendment excessive force claims: (4) due process claims; (5) state law claims against Lucia; and (6) conspiracy claims[11]; and it is further

**ORDERED** that Lucia is **DISMISSED without prejudice** as a defendant; and it is further

**ORDERED**, that the Clerk shall issue a summons and forward it, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants.  The Clerk shall forward a copy of the Summons and complaint to the

---

[10]  Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[11] If plaintiff wishes to pursue one or more of the claims dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted. Therefore, any amended complaint should set forth all the claims plaintiff wishes to pursue and identify all defendants responsible for those claims.

26

Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

      **ORDERED**, that a response to the complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

      **ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

      **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

August 4, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court