UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD LEE CURTIS,

                                        Plaintiff,

                                                            9:15-CV-00718
v.                                                          (GLS/TWD)

R. BOLA and D.G. DUBREY,

                                        Defendants.
_____

APPEARANCES:                           OF COUNSEL:

GILBERTI, STINZIANO LAW FIRM            KEVIN G. ROWE, ESQ.
Attorneys for Plaintiff
555 East Genesee Street
Syracuse, New York 13202

HON. ERIC T. SCHNEIDERMAN              DENISE P. BUCKLEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT AND RECOMMENDATION

        This civil rights action, commenced pursuant to 42 U.S.C. 1983, has been referred to me

for the purpose of conducting an evidentiary hearing on the issue of whether Plaintiff exhausted

his administrative remedies prior to commencing this action.  (Dkt. No. 38.)  Based upon the

evidence adduced at the hearing, I conclude that while Plaintiff did not exhaust the administrative

remedies set forth in the New York State Department of Corrections and Community

Supervision ("DOCCS") Inmate Grievance Program ("IGP"), N.Y. Comp. Codes R. & Regs. tit.

7, § 701.5 (2013), he failed to do so because the remedies were rendered unavailable and,

therefore, recommend that he be excused from the exhaustion requirements of the DOCCS IGP.

## I.    BACKGROUND

Plaintiff is an inmate in the custody of the DOCCS and during the time relevant to his claims against Defendants Corrections Officer D.G. DuBrey ("DuBrey") and civilian food service worker R. Bola ("Bola") was housed at Clinton Correctional Facility ("Clinton"). (Dkt. No. 1 at 1-2.[1]) Plaintiff is Jewish and follows Kosher dietary laws. (Dkt. No. 29-16 at 11.) Plaintiff alleges that in January 2014, Defendant Dubrey began serving Kosher meals in the mess hall and consistently refused Plaintiff's request to wear gloves when he served Plaintiff his meals and cups of hot water. (Dkt. Nos. 1-1 at ¶¶ 18, 20, 22-23[2]; 29-16 at 12-15.) When Plaintiff complained to Defendant Bola, who was responsible for making sure everyone serving food in the mess hall wore gloves, Bola laughed and said "you Jews are always complaining," and DuBrey could serve the food however he saw fit. (Dkt. Nos. 1-1 at ¶ 18; 29-16 at 14.)

Plaintiff alleges that in mid-January 2014, DuBrey gave him hot water with a strange odor and taste, and Plaintiff felt ill after drinking it. (Dkt. Nos. 1-1 at ¶¶ 18-19; 29-16 at 19.) Plaintiff's body became covered with welts and his legs and ankles became swollen, and he continued to be ill with vomiting and excessive bowel movements, along with the welts and complained that DuBrey was poisoning him by putting something in the hot water. (Dkt. No. 1-1 at ¶¶ 30-39.) Plaintiff spent time in the infirmary and on bed rest as a result. *Id*. at ¶¶ 31-32, 34-35.)

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2] Paragraph numbers are used where documents identified by docket number contain consecutively numbered paragraphs.

After Plaintiff switched off the Kosher meal plan as a result of threats by DuBrey,

DuBrey and Bola issued an inmate misbehavior report ("IMR") on Plaintiff for picking a regular

meal. (Dkt. No. 1-3 at 53.) Plaintiff was found guilty at a Tier 3 hearing and given two months

in the Special Housing Unit ("SHU"), which he served prior to the reversal of the guilty finding

by Albert Prack on May 27, 2014. *Id*. at 56, 68.

Plaintiff's § 1983 claims for violation of his: (1) First Amendment rights to the free

exercise of religion; (2) Eighth Amendment right to nutritionally adequate and safe food, arising

out of the alleged food tampering; and (3) First Amendment retaliation claims were found by

Judge Sharpe to survive initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. (Dkt. No. 5

at 9-12, 19-21.)

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiff filed two grievances against Bola and Dubrey related to his claims in this action.

In the first, Grievance CL-65155-14, dated February 9, 2014, Plaintiff complained that his

Kosher meals and hot water and cups were being handled and served by non-gloved, non-

inmates. (Dkt. No. 1-3 at 16-26.) Plaintiff also complained that poison or a caustic cleaning

solution had been placed in his hot water since January 15, 2014. *Id.* On March 5, 2014, the

Superintendent issued a decision unfavorable to Plaintiff on the grievance. *Id*. at 27.

In the second, Grievance CL-65307-14, dated March 10, 2014, Plaintiff complained of

staff serving Kosher cold alternative diet ("CAD") meals and hot water without gloves; DuBrey

and Bola tampering with his CAD meals and putting caustic cleaning solution in his food and hot

water; DuBrey threatening Plaintiff with harm if he did not get off the CAD diet and writing him

3

up for receiving regular food after being informed that Plaintiff had executed a sign off form; and

DuBrey filing a retaliatory false IMR.  (Dkt. No. 1-3 at 45.)  On March 25, 2014, the

Superintendent issued a decision unfavorable to Plaintiff on the grievance. (Dkt. No. 1-3 at 51-

55.)

Claiming that Plaintiff did not appeal the Superintendent's decisions on the two

grievances to the DOCCS Central Office Review Committee ("CORC"), as required under the

DOCCS IGP, Defendants Bola and DuBrey moved for summary judgment dismissing Plaintiff's

complaint for failure to exhaust.  (Dkt. No. 29.)

Plaintiff opposed the summary judgment motion on the grounds that he had appealed the

Superintendents' decisions on both grievances to CORC in accordance with the IGP

requirements.  (Dkt. Nos. 1-1 at ¶ 66; 1-3 at 27, 52.)  The Court found that there were material

issues of fact in dispute on the issue of exhaustion that precluded summary judgment and

recommended that an exhaustion hearing be held.  (Dkt. No. 35 at 20.)  The Hon. Gary L.

Sharpe, Senior United States District Judge, adopted this Court's Report and Recommendation

and ordered that the matter be scheduled for an evidentiary hearing before this Court on the issue

of exhaustion of administrative remedies.  (Dkt. No. 38 at 3.)  Plaintiff was assigned *pro bono*

counsel on March 7, 2017 (Dkt. No. 40),[3] and an exhaustion hearing was held by the Court on

June 5 and 6, 2017.

III.    **HEARING TESTIMONY AND EVIDENCE**

At the evidentiary hearing, the Court heard testimony from Christine Gregory and Karen

Bellamy for Defendants.  Plaintiff Donald Lee Curtis also testified.

---

[3]  The Court extends its appreciation to Kevin G. Rowe, Esq. for his *pro bono* service.

**A.      Exhibits**

The Court received into evidence the following exhibits introduced by Defendants:

Exhibit D-2      DOCCS Directive 4040;

Exhibit D-3      Grievance CL-65155-14, dated February 9, 2014;

Exhibit D-4      Grievance CL-65307-14, dated March 10, 2014;

Exhibit D-5      Grievance CL-65890-14, dated August 5, 2014;

Exhibit D-6      Superintendent's determination of Grievance CL-65155-14, dated March 5, 2014;

Exhibit D-7      Superintendent's determination of Grievance CL-65307-14, dated March 25, 2014;

Exhibit D-8      Inmate Grievance Resolution Committee ("IGRC") response to Grievance CL-65890-14, dated August 13, 2014;

Exhibit D-9      Superintendent's determination of Grievance CL-65890-14, dated September 5, 2014, and Plaintiff's appeal statement, dated September 10, 2014;

Exhibit D-10    CORC decision on Grievance CL-65890-14, dated December 30, 2014;

Exhibit D-11    List of all of Plaintiff's appeals to CORC from January 22, 1998 to July 25, 2016;

Exhibit D-12    Plaintiff's August 3, 2014, letter to the IGRC inquiring about the status of his appeal to CORC of Grievance CL-65155-14;

Exhibit D-13    Letter from Plaintiff, dated April 24, 2014, to IGP Supervisor;

Exhibit P-15    Response from Christine Gregory, IGP Supervisor, dated August 4, 2014, to an inquiry from Plaintiff, dated August 3, 2014, regarding his appeal to CORC on Grievance CL-65115-14.

The Court received into evidence the following exhibits introduced by Plaintiff:

5

Exhibit P-1      Grievance CL-65155-14, dated February 9, 2014;

Exhibit P-2      Correspondence dated February 25, 2014, re Grievance CL-65115-14;

Exhibit P-3      Superintendent's decision on Grievance CL-65115-14, dated March 5, 2014, with "(See attached appeal)" written in the appeal statement section and signed by Plaintiff on March 6, 2014;

Exhibit P-4      Handwritten document entitled "Grievance Appeal to CORC # CL-65115-14-Code 49," dated March 6, 2014, and submitted as a part of the appeal;

Exhibit P-5      Letter dated March 6, 2014, from Plaintiff to Anthony Annucci, Acting Commissioner of DOCCS;

Exhibit P-7      Superintendent's decision on Grievance CL-65307-14 with Plaintiff's signed appeal statement dated March 26, 2014;

Exhibit P-8      Document entitled "Clinton Corr. Facility Grievance Complaint" by Plaintiff, dated March 25, 2014, complaining that his mail in SHU was not reaching its destination;

Exhibit P-11     Document entitled "Clinton Corr. Facility Grievance Complaint" by Plaintiff, dated April 1, 2014, complaining that his mail was disappearing after being given to the law library officer to mail;

Exhibit P-12     June 10, 2014, letter from Plaintiff to Clinton County ADA, Jason Marx, and BCI Captain Robert S. LaFountain regarding matters related to DuBrey's conduct, including, *inter alia*, the poisoning of Plaintiff's food;

Exhibit P-13     June 11, 2014, letter from Plaintiff to the United State Attorney, Northern District of New York regarding DuBrey's alleged criminal and civil violations of Plaintiff's rights;

Exhibit P-15     August 4, 2014, memorandum to Plaintiff from Gregory responding to Plaintiff's August 3, 2014, inquiry regarding the status of his appeal to CORC on Grievance No. CL-65115-14;

Exhibit P-16     Document entitled "Clinton Corr. Facility Grievance" by Plaintiff, dated August 4, 2014, complaining about IGP Supervisor Gregory allegedly interfering with his grievance appeals to CORC on grievances against DuBrey;

Exhibit P-17     August 5, 2014, letter from Plaintiff to Karen Bellamy regarding

Gregory's alleged destruction of all of his code 49 appeals to CORC and withholding decisions on his code 49 grievances against DuBrey;

Exhibit P-18    Plaintiff's Grievance No. CL-65890-14, dated August 5, 2014;

Exhibit P-19    Bellamy's August 12, 2014, letter in response to Plaintiff's August 5, 2014, correspondence;

Exhibit P-20    IGRC's August 13, 2014, response to Plaintiff's Grievance No. CL-65890-14;

Exhibit P-24    July 30, 1998, letter from the DOCCS Supervising Librarian and Law Library Coordinator thanking Plaintiff for his time and effort in teaching a legal research course to inmates;

Exhibit P-25    April 28, 2014, memorandum from Gregory to Plaintiff responding to his April 24, 2014, letter (*see* exhibit D-3).

## B.    Testimony of Christine Gregory and Karen Bellamy for Defendants

### 1.    Christine Gregory    Direct

Christine Gregory has been employed by DOCCS for twenty-one years, has been an IGP supervisor for thirteen years, and has been at Clinton since January 2012. (T. at 5-6.[4]) Gregory's duties as IGP Supervisor include reading grievances, coding and titling the grievances, conducting initial investigations, and supervising appeals and the filing and processing of grievances through the whole system. (T. at 7.) During the relevant time period, the IGP office was staffed by Gregory and a Sergeant and was located in a room shared with mailroom staff and the secretary for the executive team. (T. at 11-12, 39.)

Inmate grievances are processed in accordance with DOCCS Directive 4040. (T. at 11-12; Ex. D-2.) Under Directive 4040, inmates initiate the grievance process by submitting a

---

[4]    The exhaustion hearing transcript is found at Dkt. No. 48. Citations to the hearing transcript will be referenced as "T" and the page numbers as set forth therein will be used rather than the numbers assigned by the CF/ECM docketing system.

complaint to the grievance office by internal mail, generally in a sealed envelope. (T. at 10-12.) During the relevant time period, Gregory opened the envelope, read the grievance, and coded and titled it. (T. at 12.) Gregory determined the appropriate code and wrote the code number at the top of the grievance. *Id.* An inmate clerk then assigned a grievance number. (T. at 19-20.)

Code 49 is the designated code for grievances that allege staff misconduct. (T. at 12-13.) Non-staff misconduct grievances are forwarded to the IGRC for processing through an IGRC hearing, and the decision can be appealed to the Superintendent and CORC. (T. at 9.) Code 49 grievances, however, go directly to the Superintendent for processing, and the Superintendent's decision can be appealed to CORC. *Id.* Gregory has no involvement in determinations made by the IGRC, the Superintendent, or CORC. (T. at 12-13, 39-44.)

The two grievances at issue, CL-65115-14 and CL-65307-14, were both code 49 grievances. (T. at 12; Ex. D-3, D-4.) On a code 49 grievance, the Superintendent assigns the supervisor of the accused staff member to conduct an investigation, and the Superintendent then renders a decision on DOCCS Form 2133. (T. at 12-13; *see, i.e.*, Ex. D-6.) The decision is delivered first to the IGP office. (T. at 13.) The IGP staff files the decision and forwards two copies to the inmate who filed the grievance. (T. at 14.)

In order to appeal the Superintendent's decision to CORC, an inmate must complete and sign the appeal statement at the bottom of the decision and submit it to the IGP office within seven days of receipt. (T. at 14, 23.) Following receipt of an appeal in the IGP office, the appeal is forwarded to CORC by regular mail. (T. at 15.) CORC's decision is sent to the IGP office where it is filed with a copy forwarded to the inmate. *Id.*

Gregory identified Plaintiff's Grievance CL-65115-14 in which he complained, *inter alia*,

about staff serving his Kosher meals without gloves and poisoning his food.  (T. at 16-18; Ex. D-3.)  Gregory had written code 49 at the top of the grievance.  (T. at 18.)  Gregory also identified the Superintendent's March 5, 2014, response to the grievance, which was maintained in the IGP office.  (T. at 22; Ex. D-6.)   The appeal statement portion of the form had not been completed on the copy of the decision identified by Gregory.  *Id.*  Gregory testified that she had reviewed the records relating to Grievance CL-65115-14 as maintained by the Clinton IGP office before testifying, and the records did not indicate that Plaintiff had filed an appeal to CORC from Superintendent's decision.  (T. at 24.)

Gregory similarly identified both Plaintiff's code 49 Grievance No. CL- 65307-14, which also raised the claim his food had been poisoned and in addition alleged that DuBrey had filed an IMR against him in retaliation for his first grievance, and the Superintendent's March 25, 2014, response.  (T. at 28-29, 32-33; Ex. D-4, D-7.)  As with Grievance CL-65115-14, the appeal statement at the bottom of the decision had not been completed and, according to Gregory, the IGP office had no record of Plaintiff filing an appeal to CORC.  *Id.* at 34; Exhibit D-7.

Gregory identified her memorandum to Plaintiff, dated August 4, 2014, sent in response to Plaintiff's August 3, 2014, inquiry regarding the status of his appeal to CORC on Grievance CL-65115-14.  (T. at 25-26; Ex. P-15.)  The August 4, 2014, memorandum stated that no appeal to CORC had been received for the grievance.  *Id.*  Gregory also identified Plaintiff's Grievance No. CL-65890-14, in which Plaintiff complained that his grievances and appeals, including appeals from Grievances CL-65115-14 and CL-65307-14, were disappearing, and that he believed they were being tampered with by IGP staff or other Clinton staff.  (T. at 39-44; Ex. D-5.)  The grievance was denied by the IGRC, the Superintendent, and, in relevant part, by CORC.

9

(*See* Exhibits D-8, D-9, and D-10.)

        2.    <u>Christine Gregory    Cross</u>

On cross-examination, Gregory testified that she was not familiar with the process whereby inmates get their outgoing and inter-facility mail from the cell blocks to the mailroom. (T. at 46.)  She knew only that there are mailboxes on the blocks in general population, and the mail placed in the mail boxes is brought to the mailroom and sorted into inter-facility and outside mail. *Id*.  Gregory was also unfamiliar with how inmates in SHU mail grievances or appeals to the IGP office.  (T. at 55.)  Gregory testified that the intra-facility mail is delivered to her in the administrative office by a civilian mailroom staff person.  (T. at 48.)

When the Superintendent's decision on a code 49 grievance arrives in the IGP administrative office, it is placed in the file for the grievance, and if the inmate wishes to appeal to CORC he completes and signs the appeal statement at the bottom of one of the copies of the decision sent to him and returns it through the inter-facility mail process to the administrative office.  (T. at 49-50.)  When appeals are received in the IGP office, Gregory opens them, places the appeal statement in a folder with all of the other grievances and appeals received that day, and hands the folder to a corrections sergeant.  (T. at 50-52.)  The corrections sergeant hand carries the folder of grievances and appeals from the IGP office to an inmate clerk working in the inmate grievance office in the school building two buildings back from the administrative office behind the gate.  (T. at 51.)  The inmate clerk prepares a summarization and sends the appeal and summarization back to Gregory via a corrections sergeant.  *Id*.  Gregory prepares a cover sheet to go to CORC with the appeal.  (T. at 50.)

Gregory places the original of the superintendent's decision for the grievance and the

appeals statement in the file and sends a copy of the appeal to CORC.  (T. at 53-54.)  Gregory

does not replace the original decision when Plaintiff files an appeal.  *Id.*  The decision with the

appeal statement is placed in the file along with the original.  *Id.*

Gregory conceded on cross-examination that she does not know whether Plaintiff

deposited appeals on Grievances CL-65115-14 and CL-65307-14 into mailboxes at Clinton.  (T.

at 56.)  She testified she knew only that no appeals were contained in her file when she was asked

to search her files on the two grievances.  (T. at 57.)  Gregory acknowledged that if the appeals

were put in a different grievance file, she would have not have been able to find them.  *Id.*

3.    Karen Bellamy    Direct

Karen Bellamy is the Director of the DOCCS IGP.  (T. at 75.)  Bellamy has been

employed by DOCCS for thirty-three years and has been Director of the IGP since 2006.  *Id.*  She

is responsible for ensuring that the grievance program runs in accordance with DOCCS

Directives 4040 and 4042; supervising staff in the correctional facilities through regional

coordinators in the central office; ensuring grievances are filed and processed and appeals

responded to by CORC in a timely manner; and ensuring copies of documents are retained in

accordance with DOCCS Directive 2010.  *Id.*

According to Bellamy, procedures for handling inmate grievances and appeals are the

same now as they were between January and March of 2014.  (T. at 77.)  Bellamy explained that

CORC receives appeals from decisions of the Superintendent by mail from the IGP supervisors

at the facilities.  *Id.*  CORC keeps a hard copy record of appeals received from the facilities.  (T.

at 78.)  Bellamy testified that her office receives correspondence from inmates inquiring into the

status of an appeal.  *Id.*  Her office keeps a record of receipt of the correspondence but not the

11

correspondence itself.  (T. at 78.)  Depending on the inmate and how the letter is written,

Bellamy's office checks with the inmate's facility to see if the inmate has attempted to file or had

any contact with the IGP supervisor.  (T. at 79.)  Usually, Bellamy's office returns all of the

documents to the inmate with instructions that he needs to file at the facility.  *Id*.

CORC maintains a data base of all appeals from the Superintendent to CORC.  (T. at 84-

85.)  Bellamy identified a printout indicating Plaintiff had filed seventy-one appeals with CORC

between January 22, 1998, and July 25, 2016, as "a true and accurate copy of the list of all

records of appeals brought by [Plaintiff]."  (T. at 80, 89; Ex. D-11.)  The printout does not

include Grievances CL-65155-14 and CL-65307-14 and, according to Bellamy, CORC has no

record of appeals having been filed in relation to those grievances.  *Id*. at 88; Exhibit D-11.

The printout does include an appeal on Plaintiff's Grievance CL-65890-14, complaining

his grievances and appeals, including appeals from Grievances No. CL-65115-14 and CL-65307-

14, were disappearing and indicating he believed that IGP staff or other staff were responsible.

(Ex. D-5, D-11.)  In its decision on the appeal on that grievance, CORC noted the facility

investigation determining that Grievances CL-65115-14 and CL-65307-14 were answered by the

Superintendent and were not appealed to CORC.  (Ex. D-10.)

### 4.   Bellamy   Cross

Bellamy acknowledged that CORC's records, including the printout, only reflect receipt

of appeals by CORC and not receipt of an appeal by the IGP office before it is sent to CORC.  (T.

at 95-96.)  According to Bellamy, if Plaintiff had put an appeal in the mail, she would consider

that to be compliance with the obligation to submit an appeal.  *Id*. at 101.  Bellamy testified she

did not know whether Plaintiff had dropped an appeal in the mail with respect to Grievances CL-

65115-14 and CL-65307-14.  *Id*.

     5.    <u>Bellamy    Re-Direct and Re-Cross</u>

On re-direct, Bellamy was asked if she had reviewed CORC records to see if there was any correspondence from Plaintiff regarding the status of his appeals on Grievances CL-65115-14 and CL-65307-14.  (T. at 111-112.)  She testified she had reviewed her records, and there was no such correspondence.  (T. at 112.)  On re-cross, Bellamy was shown her August 12, 2014, letter to Plaintiff acknowledging receipt of his August 5, 2014, letter.  (T. at 113; Ex P-19.)

Plaintiff's August 5, 2014, letter complained that Gregory was purposefully destroying Plaintiff's code 49 grievances, particularly those against DuBrey.  (Exhibit P-19.)  Plaintiff wrote in the letter, "[f]or example, I sent my CORC appeal to C. Gregory of grievance CL-65115-14, and I have my copy, yet Gregory tells me that my appeal to CORC was never received."  *Id*.  In her August 12, 2014, letter, Bellamy wrote:

> Contact with the facility administration reveals that you did not submit appeals for CL-65155-14 and CL-65307-14.  It is noted that CL-65890-14, regarding this issue, is currently pending an IGRC hearing.
>
> You are advised that Directive #4040 makes no provision for an inmate to refer grievances directly to Central Office, therefore, your document is being returned to you and we will not retain a copy in this office.
>
> Specific grievance concerns should be addressed directly to the IGP Supervisor for the most expeditious resolution.

*Id*.  After reviewing her letter to Plaintiff, Bellamy acknowledged having received Plaintiff's August 5, 2014, letter.  (T. at 114.)

**C.    Plaintiff's Testimony**

  1. <u>Direct</u>

Plaintiff has been in the state prison system since 1986 when he was twenty-two years old.  (T. at 118.)  Prior to entering the New York State system, Plaintiff graduated from high school in North Carolina and obtained an associates degree in paralegal studies by correspondence course.  *Id*. at 119.  Plaintiff earned his inmate practice associate IPA while housed in Attica Correctional Facility, received a theology scholarship from Prisoners Web Correspondence Course in New Jersey, and has taken almost every vocational and other course offered throughout his incarceration.  *Id*.  Plaintiff received recognition for teaching a legal research course for inmates in 1988 and has used his paralegal studies to help inmates in criminal and civil litigation.  (T. at 120-21.)  Plaintiff was elected a grievance representative in 1997 or 1998, and he is familiar with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) *Id*.

According to Plaintiff, he followed the New York IGP through CORC even before the PLRA made it mandatory, and he was familiar with Directive 4040 (setting forth the IGP) during the relevant time period.  (T. at 122.)  Plaintiff testified that during his thirty-three years in prison he has filed more grievances than CORC has listed on the printout because he did not appeal grievances where the problem had been worked out some other way.  (T. at 123.)  However, Plaintiff has always filed appeals to CORC if the matter had not been satisfactorily resolved because he focuses on serious violations that he sees as civil rights matters and wants to see what CORC will do even if he does not plan on going to court.  *Id*.

On February 9, 2014, Plaintiff wrote Grievance CL-165115-14 (Ex. P-1) complaining of DuBrey not wearing gloves when serving Plaintiff's Kosher meals and poisoning Plaintiff's food after he complained, resulting in Plaintiff becoming seriously ill and requiring medical treatment in the facility hospital five or six times. (T. at 124-26.)  Plaintiff received two copies of the Superintendent's March 5, 2014, unfavorable decision on March 6, 2014.  (T. at 130.)  Plaintiff prepared an appeal to CORC the same day by signing and dating the appeal statement portion at the bottom of the Superintendent's decision and attaching a separate appeal statement.  (T. at 131.)  Plaintiff put the appeal in a sealed envelope and placed it in a facility mailbox on his way to the mess hall that evening.  (T. at 131-34; Ex. P-3, P-4.)  The same evening Plaintiff mailed a letter to Acting DOCCS Commissioner Anthony J. Annucci asking that the Inspector General conduct an investigation regarding the alleged food poisoning.  (T. at 134-35; Ex P-5.)

Plaintiff mailed Grievance CL-65307-14, complaining of some of the same the issues in Grievance CL-65155-14, along with DuBrey's alleged retaliatory filing of an IMR against him, on March 10, 2014, after he had been placed in keep lock by Defendants.  (T. at 137-38; Ex P-6.)  Plaintiff was in SHU when he received the Superintendent's unfavorable decision on the grievance.  (T. at 140-41; Ex D-7.)  Plaintiff testified that he appealed the Superintendent's decision to CORC.  (T. at 141; Ex P-7.)  Plaintiff wrote his appeal to CORC on the bottom of the Superintendent's decision, and signed and dated it on March 26, 2014.  (T. at 142; Ex. P-7.)

Plaintiff explained that when he appeals to CORC, he places a piece of carbon paper between the two copies of the Superintendent's decision, writes the appeal in ink on the top copy, seals the original in an envelope addressed to whoever is in charge of grievances at the facility, mails it, and keeps the keeps the carbon copy.  (T. at 142.)  Plaintiff testified that when an

15

inmate is in SHU he does not have access to a mailbox and must hand his mail to a law library officer who comes by with a cart with a box for mail on it. (T. at 142-43.) The officer puts the mail in the box and leaves. *Id.* Plaintiff handed his appeal to CORC to the officer collecting mail the evening of March 26, 2014. *Id.*

Plaintiff testified on direct regarding two additional grievances he claims to have mailed to the IGP office and never received any response. The first grievance is dated March 25, 2014, and complains that while in SHU, a considerable amount of Plaintiff's mail, both outside and inter-facility, including grievances, that he had given to the staff person collecting the mail was disappearing after he handed it over and not reaching its destination. (T. at 147-48; Ex. P-8.) The second grievance to which Plaintiff claims to have received no response is dated April 1, 2014, and was delivered to the officer who picked up the mail from SHU. (T. at 152; Ex. P-11.) The grievance complained of Plaintiff's legal and family mail not being delivered. *Id.*

Plaintiff testified he became aware grievances were likely not reaching the IGP office because generally a sergeant or civilian interviews him when he files a grievance, and he had heard from no one regarding the two grievances. (T. at 148.) Plaintiff also testified he had sent the original of an affirmation he received from an inmate to an attorney in Plattsburgh and subsequently learned the attorney never received it. *Id.*

On June 10, 2014, Plaintiff sent a letter to the Clinton County District Attorney's Office and the New York State Police Bureau of Criminal Investigation regarding the poisoning of his food and other threats, harassment, and retaliation by DuBrey and requested an investigation and prosecution. (T. at 154; Ex. 12.)

2.    <u>Plaintiff    Cross</u>

On cross-examination, Plaintiff expressed the belief that Gregory had tampered with his grievances.  (T. at 179-86.)  Plaintiff's belief was based on his prior experience as an IGRC representative which made him privy to what goes on that is not supposed to, and Gregory having sent him grievance decisions, which are confidential, unsealed which thereby allowed correctional staff to see them, putting his life in jeopardy with security staff.  *Id*.   Plaintiff also testified that it could have been someone else in her office.  (T. at 219.)  Plaintiff, however, did not present evidence showing his belief with regard to Gregory and her staff to be more than speculation.  (T. at 179-86.)

Plaintiff was questioned on cross-examination regarding his April 24, 2014, letter to Gregory in which he noted that he had filed numerous grievances since being in SHU and not received any decisions even though they had been mailed far in advance of Grievance CL-65464-14 for which an appeal to CORC was enclosed.  (T. at 199-202; Ex. D-13.)  Plaintiff requested copies of all of his pending grievances filed while he was in SHU-5-cell and mailed before Grievance CL-65464-14.  *Id*.  In her April 28, 2014, memorandum to Plaintiff,  Gregory identified Grievance CL-65464-17 as the only grievance within the housing location of SHU since March 13, 2014.  (T. at 202; Ex. P-25.)  When asked if he was concerned that no mention was made of Grievances Cl-65115-14 and CL-65307-14 in Gregory's memorandum, he responded that he was not since both grievances were written and mailed prior to the time he was placed in SHU and, therefore, did not fall within his request.  (T. at 203, 230-31.)

Plaintiff was also asked on cross-examination why he only asked Gregory about the status

of his appeal on Grievance CL-65115-14 and not Grievance CL-65307-14, and why he did not include a copy of his appeal statement in his August 3, 2014, letter.  (T. at 194-97; Ex. D-12.)  Plaintiff testified that he only asked about Grievance CL-65115-14 because a decision on that grievance was past due and, because it was the first one filed, he would have to receive a decision from CORC on that grievance before he could have a decision on the second grievance.  (T. at 196.)  Plaintiff testified he did not include a copy of the appeal statement in his August 3, 2014, letter because it was attached to his March 6, 2014, appeal to CORC and until he received Gregory's August 4, 2014, response, he had no knowledge CORC did not have the appeal.  (T. at 197.)

Plaintiff was asked why he did not enclose copies of his appeals statements when he wrote to Bellamy on August 5, 2014, regarding the appeals to CORC on Grievances CL-65115-14 and CL-65307-14, after he had been told by Gregory that there was no record of an appeal to CORC on Grievance CL-65115-14.  (T. at 208-10; Ex. P-17.)  Plaintiff explained that he had been corresponding with Bellamy for years and knew that she always replied that inmates are not to send grievances to Albany but to go through the IGP supervisor in their facility, and that she sent copies of her reply to the IGP supervisor and superintendent of the facility.  (T. at 210.)  Therefore, it was not a normal practice to send grievance documents to her.  *Id*.  Plaintiff did include some documents in the letter because he wanted Bellamy to know the seriousness of the two grievance claims.  (T. 211-12.)  Plaintiff asked defense counsel why, given that he was having problems with delivery of mail he sent from SHU, he would risk sending the appeal statements to Bellamy.  (T. at 212.)  Plaintiff denied that the appeal statements on Grievances CL-65115-14 and Grievance CL-65307-14 never surfaced until he filed his complaint in this

18

action.  (T. at 213.)

3. _Plaintiff   Re-Direct_

Plaintiff, who had already testified regarding the procedure he follows in doing appeals to

CORC, again testified that he sends the original appeal statement by mail to the IGP office and

retains a carbon copy.  (T. at 225-26.)  When asked on re-direct, Plaintiff testified that he did not

have access to a copy machine while at Clinton.  (T. at 226.)  According to Plaintiff, there was no

copy machine in the law library.  _Id_.  Inmates were required to give legal documents to be copied

to an officer and would not receive the documents or copies back until the next day.  _Id_.  Plaintiff

testified that if he had sent his copies of the appeal statements to Gregory or Bellamy he would

have been left without any copies.  (T. at 227.)  Plaintiff also testified that he attached his carbon

copies of his appeal statements on Grievances CL-65115-14 and CL-65307-14 to his complaint

in this action because he trusted them to be in the court's custody.  (T. at 226.)

4. _Plaintiff   Re-Cross_

Plaintiff testified on re-cross examination that Grievances CL-65115-14 and CL-65307-

14 were the two most serious grievances he had filed in his thirty-three years in corrections.  (T.

at 233.)  When asked if it was his testimony that despite having filed seventy-one grievances he

had never made a photocopy of a grievance, Plaintiff responded with testimony, which he

claimed could be confirmed by DOCCS records, that he had never purchased photocopy services

at Clinton.  (T. at 234-35.)  According to Plaintiff, his grievances, letters, and complaints at

Clinton were all handwritten using carbon papers for copies.  (T. at 235.)

**IV.   LEGAL STANDARD FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under

section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted).  In New York State prisons, DOCCS has a well-established three-step IGP.  N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence.  *Id*. § 701.5(a)(1).  A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

There are special procedures that may be used when, as in this case, the relevant grievances are code 49 involving staff misconduct. *Id*. § 701.8. A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. *Id*. § 701.8(f). If the grievant wishes to appeal a decision by the Superintendent to CORC, he must file a notice of decision to appeal with the inmate grievance clerk at the bottom of the Superintendent's decision within seven days of receipt of the decision. *Id*. § 701.8(h). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.8(i) (incorporating § 701.5).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-

CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017)[5] (quoting 7 N.Y.C.R.R. §

701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure

by the IGRC or the superintendent to timely respond to a grievance . . . can  and must  be

appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including

receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his

administrative remedies as required under the PLRA.  *See Ruggerio v. Cnty. of Orange*, 467 F.3d

170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps

that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its

own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically,

section 1997e(a) provides that only those administrative remedies that "are available" must first

be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion

requirement hinges on the availability of administrative remedies[.]" (quotations and citations

omitted)).  In the PLRA context, the Supreme Court has determined that "availability" means

that "an inmate is required to exhaust those, but only those, grievance procedures that are capable

of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotations

and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal

_____

    [5] Copies of all unpublished decisions cited herein will be provided to Plaintiff in
accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end    with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.  *See Mena v. City of New York*, No. 13-cv-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

The Second Circuit has ruled that a plaintiff in a lawsuit governed by the PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies.  *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).  Rather, PLRA exhaustion is a matter of judicial administration.  *Id.*  Whether a plaintiff has exhausted his administrative remedies is a question of law to be decided by the court.  *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements.  *See Jones,* 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  Plaintiff must then establish that the IGP grievance procedure was unavailable to him under *Ross*.

## V.    ANALYSIS OF THE EXHAUSTION ISSUE

The parties do not dispute that Plaintiff mailed Grievances CL-65155-14 and Cl-65307-

14 to the IGP office at Clinton; that the grievances were received, labeled code 49 and processed by the IGP staff; and that the grievances were placed by Gregory in the Clinton Superintendent's inbox for investigation and determination.  (T. at 10-13, 20-21, 28-31, 47, 124-26, 137-38; Exhibits D-3, D-4.)  The parties likewise do not dispute that Plaintiff received the Superintendent's March 5, 2014, unfavorable decision on Grievance CL- 65115-14 on March 6, 2014, and the Superintendent's March 25, 2014, unfavorable decision on Grievance CL 65307-14 on March 26, 2014.  (T. at 22, 32-33, 130, 140-41; Ex. D-6, D-7.)

Plaintiff provided detailed testimony at the hearing regarding his actions in drafting, signing, and mailing appeals to CORC on Superintendent's decisions on Grievances CL-65115 -14 and Cl-65307-14.  (T. at 131-34, 141-42.)  Copies of his signed and dated appeals statements and a separately attached appeal statement on Grievance CL-65115-14, were entered into evidence at the hearing.  (Ex. P-3, P-4, P-7.)

Gregory, who testified she was not familiar with the process by which inmates deposit mail into the inter-facility mail, acknowledged that she did not know whether Plaintiff had mailed his appeals to CORC in Grievances CL-65115-14 and Cl-65307-14 to the IGP office.  (T. at 56.)  Gregory knew only that she found no appeals in the files when she was asked to conduct a search.  (T. at 24, 24, 57.)  Bellamy likewise testified that she had no knowledge whether Plaintiff had dropped appeals to CORC on the two grievances in the mail.  (T. at 101.)  Bellamy testified that if Plaintiff had put the appeals to CORC in the mail, she would consider him to be in compliance with the obligation to submit appeals.  *Id*.

Based upon the credible testimony of Gregory and Bellamy, the Court finds that Plaintiff failed to satisfy the PLRA requirement that he complete the IGP administrative review process,

24

including issuance of a decision by CORC on his appeals, before commencing this lawsuit. *See Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nustle*, 534 U.S. 516 (2002) (complete exhaustion requires receipt of a decision from CORC prior to commencement of an action). However, the Court also finds credible Plaintiff's well-documented testimony regarding his long history of appealing grievances through CORC; his belief regarding the seriousness of the subject matter of the grievances at issue; his actions with regard to Grievances CL-65115-14 and CL-65307-14, including the appeals to CORC; and Plaintiff's tenacity in addressing and following up on issues with his mail, both generally and with regard to the grievances at issue.

Plaintiff's testimony establishes that he was very familiar with the requirements and workings of the DOCCS grievance procedure and had a long standing practice of appealing all unfavorable, unresolved decisions on his grievances through to CORC absent a resolution at an earlier point. (T. at 120-23.) Plaintiff provided a detailed description of the procedure he followed in drafting and mailing the appeals, one of which he dropped in the mail on March 6, 2014, on his way to the mess hall while he was still in general population, and the other, while he was in SHU, by giving it to the library officer who came by with a cart with a box in it to collect mail the evening of March 26, 2014. (T. at 131-34, 140-43.)

Plaintiff has identified Grievances CL-65115-14 and CL-65307-14 as the two most important grievances he has filed in his thirty-three years of incarceration. (T. at 234-35.) Plaintiff demonstrated that he took the actions complained of in the grievances very seriously by writing to the DOCCS Acting Commissioner asking that the Inspector General conduct an investigation of the alleged food poisoning the same day he placed the appeal to CORC on

Grievance CL-65115-14 in the mailbox.  (T. at 134-35, Exhibit P-5.)  In addition, on June 10, 2014, Plaintiff wrote to the Clinton County District Attorney and the BCI requesting an investigation of the poisoning, and the next day wrote to the United States Attorney for the Northern District of New York regarding DuBrey's alleged violation of Plaintiff's rights.  (T. at 154; Exhibits P-12, P-13.)

Plaintiff's two additional grievances of March 25, 2014, and April 1, 2014, mailed while he was in SHU, provide contemporaneous proof that Plaintiff was having problems with delivery of his inter-facility mail.  (T. at 147-48, 152; Exhibits P-8, P-11.)  Plaintiff followed up on those grievances and learned from Gregory in late April 2014 that they had not been filed in the IGP Office.  (T. at 129; Ex. D-13, P-25.)

After hearing from Gregory that there was no appeal to CORC filed on Grievance CL-65115-14 on August 4, 2014 (Ex. P-15), in response to Plaintiff's August 3, 2014, inquiry (Ex. D-12), Plaintiff filed Grievance CL-65890-14 complaining that someone was tampering with his grievances, including Grievances CL-65115-14 and CL-65307-14, noting in particular that it appeared all of his grievances against DuBrey were disappearing.  (Ex. D-5.)

Based upon Plaintiff's credible testimony and documentary evidence supporting it, the Court finds that Plaintiff mailed appeals to CORC on Grievances CL-65115-14 and CL-65307-14 in accordance with the IGP, and for reasons unknown to him and through no fault of his own, those appeals did not end up in the IGP files or with CORC, effectively rendering the IGP unavailable to Plaintiff with respect to those grievances.[6]  Therefore, the Court recommends that

_____

[6]  Bellamy testified that if Plaintiff had put the appeals to CORC in the mail, she would consider him to be in compliance with the obligation to submit appeals.  (T. at 101.) While Plaintiff has presented no direct evidence proving that his appeals to CORC were thwarted

the District Court determine that the exhaustion remedies under the DOCCS IGP were rendered

unavailable to Plaintiff with regard to Grievances CL-65115-14 and CL-65307-14 and that his

claims in this action are not barred by the PLRA based upon his failure to exhaust, and that the

matter be set down for trial of Plaintiff's remaining claims.

      **ACCORDINGLY**, it is hereby

      **RECOMMENDED** that the District Court determine that the exhaustion remedies under

the DOCCS IGP were rendered unavailable to Plaintiff with regard to Grievances CL-65115-14

and CL-65307-14, and that his claims in this action are not barred by the PLRA based upon his

failure to exhaust, and that the matter be set down for trial of Plaintiff's remaining claims; and it

is hereby

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with

the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

―――――――――――――――――

by DOCCS staff machination (*see Ross*, 136 S.Ct. at 1860), nor can he reasonably be expected to
under the circumstances, he has established to the Court's satisfaction that he put the appeals to
CORC on Grievances CL-65115-14 and CL-65307-14 in the facility mail in a timely manner and
from that point on had no control over whether they would be properly delivered to the IGP
office or thereafter sent to CORC.

Dated: November 27, 2017
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS:ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

**\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated
his Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and
telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at
73-72.

II. PROCEDURAL HISTORY

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

### 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

2017 WL 986123

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ––– Fed.Appx. ––––, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

 **\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to

render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R § 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at \*9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at \*9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Slip Copy, 2017 WL 986123

Footnotes

1  In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2  Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3  Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4  The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5  Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6  According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7  Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8  In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9  In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10  If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan Mena, Plaintiff,

v.

City of New York, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City
Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently
incarcerated and proceeding *pro se*, brings this action
pursuant to 42 U.S.C. § 1983 ("Section 1983") against
Correction Officer Benjamin Eason ("Defendant"),
alleging violations of the Eighth Amendment. Now before
the Court is Defendant's motion for summary judgment.
For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis
Bantum Correctional Center ("OBCC") on Rikers Island,
Plaintiff was placed in an intake cell in the OBCC's
receiving area, which he shared with two other individuals.
(56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell
was extremely cold, vermin-infested, and too small to
accommodate three men. (*See* Doc. No. 54-1 ("Compl.")
4, 8.) Plaintiff further alleges that these conditions,
coupled with the constant noise made by the two other
inmates, prevented him from sleeping for the entire 60-

hour period that he was held in the cell. (*See id.* at 4.)
Consequently, he asked Defendant, who was on duty,
to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.)
According to Plaintiff, Defendant responded that there
was "nothing he could do" about the situation. (*Id.* ¶ 9; *see
also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC
to complain about his experience in the cell. (*See* Compl.
at 7.) The New York City Department of Correction
("DOC") has an administrative grievance procedure,
known as the Inmate Grievance and Request Program
("IGRP"), for inmates housed at facilities such as the
OBCC. The IGRP, which was available and in effect at all
times relevant to this lawsuit, requires that inmates first
file a complaint with the Inmate Grievance Resolution
Committee ("IGRC") within ten days of the complained-
of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP
Directive") § IV(D)(1).) The IGRC then attempts to
resolve the grievance informally within five days, and if the
grievance is not informally resolved, then the inmate may
request a formal hearing before the IGRC. (56.1 Stmt. ¶
12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate
may appeal the IGRC's decision to the commanding officer, or
her designee, and subsequent appeals may be taken to the
Central Office Review Committee ("CORC"). (56.1 Stmt.
¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's
decision is the final and binding decision of the DOC; if
an inmate disputes the decision of the CORC, he may
independently appeal to the Board of Correction. (IGRP
Directive at 47.) Finally, if an inmate does not receive a
timely disposition at any point throughout the grievance
process, he has the option of either granting an extension
of time to the relevant decisionmaker (i.e., the IGRC,
the commanding officer, or the CORC) or appealing and
proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see
also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting
the grievance and receiving no response, he neither
granted the DOC an extension of time nor appealed. (*See*
Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits
that he is "still waiting" for a disposition of his grievance,
but does not indicate any steps he has taken to appeal any
decision before the IGRC. (*See* Compl. 7.) In response
to a question on the Southern District of New York
Prison Complaint form asking a plaintiff to "set forth any
additional information that is relevant to the exhaustion
of your administrative remedies," Plaintiff repeated a

number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days [,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

*4 At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ___, ___, ___, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no

response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.*, *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.